IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED OF OMAHA LIFE INSURANCE COMPANY, | |
| Plaintiff, | 8:19-CV-234 |
| vs. | MEMORANDUM AND ORDER |
| ACASS SYSTEMS, LLC, et al., | |
| Defendants. | |

This case presents a collision of federal interpleader, the Bankruptcy Code, and Nebraska common law. The Court has already allowed the interpleading plaintiff to deposit disputed funds with the Court, so the plaintiff wants to be dismissed—but, one of the interpleaded defendants wants to counterclaim against the plaintiff, and another of the interpleaded defendants is in Chapter 7 bankruptcy.

So, the Court is faced with "who," "what," and "where" questions: who should remain in the case, what claims should be at issue, and in what court should they be adjudicated? For the reasons explained below, the Court concludes that the plaintiff may be dismissed, because the claims against it shouldn't be permitted, and that the remaining claims should be referred to the bankruptcy court.

BACKGROUND

Aaron Cass bought a $5 million life insurance policy from United of Omaha in 2015. Filing 1 at 2. The policy insured Aaron's life, and designated his company, ACASS Systems, as the owner and beneficiary of the policy.

Filing 1 at 2. Later that year, Aaron executed an assignment naming BizCapital BIDCO 1, LLC as the assignee of the policy. Filing 1 at 2.

In August 2018, ACASS declared bankruptcy, and its Chapter 11 petition was filed in the U.S. Bankruptcy Court for the District of Nebraska as no. 18-81299.[1] In September 2018, Aaron executed a form purporting to change ownership of the policy from ACASS to himself. Filing 1 at 3. At the same time, he completed a change of beneficiary naming his wife, Colleen Cass, as sole beneficiary. Filing 1 at 3. But a few days later, United notified ACASS it had been "unable to proceed" with those changes. Filing 1 at 3.

Aaron committed suicide on March 29, 2019. Filing 1 at 3; filing 29 at 4. ACASS (represented by the Bankruptcy Trustee), BizCapital, and Colleen dispute who should receive the proceeds of the policy. Filing 1 at 3. United agrees that someone should receive them, filed this complaint in interpleader pursuant to Fed. R. Civ. P. 22 and 28 U.S.C. § 1335, and has deposited the funds with the Clerk of the Court pursuant to Fed. R. Civ. P. 67. Filing 1 at 3; filing 30. The interpleaded defendants have filed crossclaims against one another. Filing 22; filing 29; filing 31.

To begin with, the Trustee seeks a declaratory judgment that Colleen and BizCapital have no right to the proceeds. Filing 29 at 6. The Trustee asserts that the purported changes in beneficiary and ownership of the policy were ineffective. *See* filing 29 at 5. Similarly, the Trustee contends that the purported assignment to BizCapital was ineffective. Filing 29 at 6. And, the Trustee alleges, any change in the beneficiary or ownership of the policy that was accomplished was a fraudulent transfer, avoidable pursuant to 11 U.S.C. § 548. Filing 29 at 6.

---

[1] The case was later converted to Chapter 7.

For her part, Colleen denies the Trustee's allegations. Filing 32 at 1. But she does agree with the Trustee (for different reasons) that the purported assignment to BizCapital was ineffective. Filing 32 at 1-2. So, she concludes that the change of beneficiary *was* effective, entitling her to the insurance proceeds. Filing 31 at 2.

Finally, BizCapital wants a declaration that it is entitled to the insurance proceeds. Filing 22 at 3. And BizCapital is asking for leave to counterclaim against United, alleging that it relied on correspondence from United in accepting assignment of the life insurance policy as partial collateral for a loan to ACASS. Filing 36 at 5. So, BizCapital seeks damages from United based on the alleged misrepresentations, asserting that *if* the assignment proves ineffective, it's United's fault BizCapital accepted it and made an unsecured loan. *See* filing 36. United opposes allowing BizCapital to plead any counterclaims, contending that the proposed counterclaims would be futile. Filing 38.

The parties also disagree about the appropriate forum to resolve these disputes. Under this Court's rules, proceedings arising under Title 11 of the U.S. Code, or related to a case brought under Title 11, are referred to the bankruptcy court. NEGenR 1.5(a). United, having deposited the insurance proceeds with the Clerk of the Court, doesn't care where the case is resolved: United just wants to go home, and "the remaining parties can determine in what forum they would prefer to litigate the interpleader." Filing 21 at 1. So, United moves to be dismissed from the action. Filing 33. Obviously, BizCapital opposes dismissing United. Filing 39. The Trustee and BizCapital want the pending crossclaims (and nascent counterclaims) referred to bankruptcy court. Filing 25; filing 26. Colleen opposes reference to bankruptcy court. Filing 23.

## DISCUSSION

Summed up, there are three questions before the Court:

- Should this case be referred to the bankruptcy court?
- Should BizCapital be permitted to plead its counterclaims?
- Should United be dismissed as a party?

Obviously, two of the questions presented to the Court are intertwined: if United becomes a counterclaim defendant, it shouldn't be dismissed as a party. But the Court must resolve the question of bankruptcy referral first, because before deciding the *counterclaim* questions, the Court must determine which forum should decide them—and the Court's analysis differs for the crossclaims and the proposed counterclaims.

### REFERRAL TO BANKRUPTCY COURT

Despite Colleen's opposition to referral, the choice-of-forum question isn't hard with respect to the crossclaims: the crossclaims belong in bankruptcy court. Colleen argues that they aren't actually "core" bankruptcy claims, but are only "related to" a bankruptcy matter. Filing 23 at 3. So, she says, they're so-called *Stern* claims—that is, proceedings that are defined as "core" by statute but may not, as a constitutional matter, be adjudicated as such. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34-36 (2014) (citing *Stern v. Marshall*, 564 U.S. 462 (2011)). That's not really dispositive at this point, though: if a claim may be adjudicated as a non-core *Stern* claim, the bankruptcy court can't enter a final judgment, but "should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of judgment." *Arkison*, 573 U.S. at 36.[2]

---

[2] At least, unless the parties consent to entry of a final judgment by the bankruptcy court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015).

And there's little question that the crossclaims are at the very least "related to" a bankruptcy matter.³ A case is related to a bankruptcy matter when the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. *In re AFY, Inc.*, 902 F.3d 884, 888 (8th Cir. 2018). There is such an effect if the outcome of the case could alter the debtor's rights, liabilities, options, or freedom of action, and could in any way impact upon the handling and administration of the bankruptcy estate. *Id*. The crossclaims, which directly involve funds potentially available to the bankruptcy estate, clearly meet that standard.

But the proposed counterclaims present a more difficult problem. The bankruptcy court's "related to" jurisdiction is expansive: "Even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets this broad jurisdictional test." *Cutcliff v. Reuter*, 791 F.3d 875, 882 (8th Cir. 2015). But it's hard to see any such nexus between the bankruptcy proceedings and the proposed counterclaims, when the counterclaims are predicated on BizCapital *not* getting the policy proceeds, regardless of whether the Trustee or Colleen got them instead.

Instead, BizCapital seeks to assert counterclaims "which [were] not created or determined by the Bankruptcy Code and which could certainly exist outside of bankruptcy." *See In re McDougall*, 587 B.R. 87, 91 (B.A.P. 8th Cir. 2018). They present a state-law dispute between two non-debtors that does not implicate property of the bankruptcy estate, and the outcome of which would

---

³ To be clear—the Court takes no position at this point about whether the crossclaims are actually core claims or non-core *Stern* claims. It is enough for present purposes—that is, for purposes of determining whether to refer this matter to bankruptcy—to find "related-to" jurisdiction. *See id*. The bankruptcy court can determine, when the crossclaims are more fully developed, whether they represent core proceedings.

- 5 -

not effect the bankruptcy estate. And bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor's estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995); *accord McDougall*, 587 B.R. at 91. The bankruptcy court *can't* decide the counterclaim issues. So, this Court must.

PLEADING OF COUNTERCLAIMS

And this Court finds that BizCapital's proposed counterclaims aren't ripe. The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration. *United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019). Ripeness requires the Court to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id*. The fitness prong safeguards against judicial review of hypothetical or speculative disagreements. *Id*. The hardship prong considers whether delayed review inflicts significant practical harm on the pleader. *Id*.

The touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 797 (8th Cir. 2016). One normally does not have to await the consummation of threatened injury to obtain relief. *Chabad Lubavitch of the Quad Cities, Inc. v. City of Bettendorf, Iowa*, 389 F. Supp. 3d 590, 599 (S.D. Iowa 2019) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)). But a claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. *Parrish v. Dayton*, 761 F.3d 873, 875-76 (8th Cir. 2014).

And the purpose of the ripeness doctrine is particularly implicated here: the ripeness doctrine is aimed at preventing federal courts, through premature adjudication, from entangling themselves in abstract disagreements. *Wersal v. Sexton*, 674 F.3d 1010, 1018 (8th Cir. 2012). The Constitution charges Article

III courts with the resolution of "cases and controversies," precluding them from rendering advisory opinions. *In re Bender*, 368 F.3d 846, 847 (8th Cir. 2004). And in addition to these constitutional concerns, the ripeness doctrine allows the federal courts to avoid wasting scarce judicial resources in attempts to resolve speculative or indeterminate factual issues. *Id*.

So, for instance, in *Kennedy v. Ferguson*, the Eighth Circuit affirmed the dismissal of the plaintiff's claims after he sued his deceased father's attorney for alleged fraud and malpractice arising from the disappearance of his father's most recent will. 679 F.3d 998, 1000 (8th Cir. 2012). But at the time of his suit, his father's estate remained open and no distribution had taken place. *Id*. So, the Eighth Circuit found, the plaintiff's claims against the defendant weren't ripe because he could still pursue a remedy in the probate court. *Id*. at 1002. Nor was the plaintiff's need to pursue legal action—for instance, by retaining counsel to litigate in probate court—sufficient to ripen the dispute, because

> [t]o hold otherwise would create an exception that swallows the rule—any parties who at any time who believed themselves to be injured could claim constitutional standing based solely on the expense of filing suit or even the expense of the pre-suit act of consulting with an attorney. Pursuant to the American Rule generally applicable to our nation's pay-your-own-way adversarial system of justice, such impositions upon parties' time and treasure are not independently cognizable injuries.

*Id*. at 1003.

Those principles are in play here. BizCapital's alleged injury is entirely contingent upon a finding that hasn't been made—a finding that assignment of the insurance policy was invalid. What's more, BizCapital is resisting that

finding, and presumably will continue to resist it in pursuit of its crossclaim. Because the proposed counterclaims are contingent upon future possibilities, they are not fit for review. Nor is any hardship of withholding court consideration apparent when BizCapital—having not abandoned its crossclaim—has neither sustained nor is immediately in danger of sustaining some direct injury.

Accordingly, the Court concludes that BizCapital's proposed counterclaims aren't ripe, and will deny leave to plead them at this point. Having made that determination, the Court will dismiss United from this action and refer the parties' crossclaims to bankruptcy court.

IT IS ORDERED:

1. United's motion to dismiss (filing 33) is granted, and United is dismissed as a party to this action.

2. BizCapital's motion for leave to file counterclaims (filing 36) is denied without prejudice.

3. This case is referred to the U.S. Bankruptcy Court for the District of Nebraska pursuant to NEGenR 1.5(a)(1).

4. The Clerk of the U.S. District Court for the District of Nebraska shall close this case for statistical purposes.

5. The Clerk of the District Court shall deliver, or send electronically, the Court file to the Clerk of the Bankruptcy Court, and shall advise the Clerk of the Bankruptcy Court

that this case is being referred as related to bankruptcy petition # 18-81299.

6. The Clerk of the Court shall retain the interpleaded funds currently in her possession in her secure custody and control, as provided by law, pending further instruction from this Court or the Bankruptcy Court.

Dated this 16th day of September, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge